Daniel E. Fitzpatrick, J.
This is a proceeding to remove the respondents from the premises of the petitioner upon the ground that they are objectionable tenants. The applicable clauses in the lease between the parties contain the following: “15. No Tenant shall make or permit any disturbing noises in the building by himself, his family, servants, employees, agents, visitors and licensees, nor do or permit anything by such persons that will interfere with the rights, comforts or convenience of other tenants.” Paragraph 9 of said lease states in part as follows: “ 9. Tenant and Tenant’s family, servants, employees, agents, visitors, and licensees shall observe faithfully and comply strictly with the Rules and Regulations set forth on the back of this lease, * * # Tenant agrees that any violation of any of said Rules and Regulations by Tenant or by a member of Tenant’s family, or by servants, or employees, or agents, or visitors, or licensees, shall be deemed a substantial violation by Tenant of this lease and of the Tenancy.”
The landlord alleges that the noise from respondents’ apartment is destroying the peace and quiet of the new tenants immediately underneath them. The claim is and the proof attempted to establish that the noise is of such a character as to constitute a violation of the provisions of the lease set out above. The respondents have been in possession over two and one-half years and their lease runs until December 31, 1966. It is sig *1015 nificant that the respondents over that period gave no evidence of being objectionable until the new tenants, the Levins, moved in last October. From the court’s opportunity to observe them, both the respondents and the tenants below seem to be people who under other circumstances would be congenial and happy neighbors. It is unfortunate that they have had to come to court to face each other in an eyeball to eyeball confrontation.
The respondents are a young couple with two small children, ages four and two. It was admitted by them that the children do run and play in their apartment, but they say they keep shoes off their feet when at home. The father says that he does walk back and forth at various times when at home, particularly to the refrigerator during the TV commercials and, also, to other areas of the apartment as necessity requires, but denies that he does this excessively or in a loud or heavy manner. They maintain that whatever noises emanate from their apartment are the normal noises of everyday living.
The tenants below, the Levins, are a middle-aged couple who go to business each day. They are like many others of our fellow citizens, who daily go forth to brave the vicissitudes of the mainstream of city life. At the end of the toilsome day, like tired fish, they are only too happy to seek out these quiet backwaters of the metropolis to recuperate for the next day’s bout with the task of earning a living. They have raised their own child and are past the time when the patter of little feet overhead is a welcome sound. They say they love their new apartment and that it is just what they have been looking for and would hate to have to give it up because of the noise from above. Mrs. Levin is associated with the publisher of a teen-age magazine and realizes that she is in a bind between her desire for present comfort and the possible loss of two future subscribers. She consequently hastens to add that she loves children and has no objection to the Sokolows because of them — that it is solely the noise of which she complains. So we have the issue.
The landlord’s brief states that in its view, the conduct that is even more objectionable than the noise, is the “unco-operative attitude of the Tenants ”. This observation is probably prompted by testimony to the effect that Mr. Sokolow, one of the upstairs tenants, is reported to have said “ This is my home, and no one can tell me what to do in my own home ’ ’. This is a prevalent notion that stems from the ancient axiom that a man’s home is his castle.
The difficulty of the situation here is that Mr. Sokolow’s castle is directly above the castle of Mr. Levin. That a man’s home is his castle is an old Anglo-legal maxim hoary with time and the *1016 sanction of frequent repetition. It expressed an age when castles were remote, separated by broad moors, and when an intruder had to force moat and wall to make his presence felt within. The tranquillity of the King’s peace, the seclusion of a clandestine romance and the opportunity, like Hamlet, to deliver a soliloquy from the ramparts without fear of neighborly repercussions, were real. Times however change, and all change is not necessarily progress, as some sage has perceptively reminded us. For in an era of modernity and concentrated urban living, when high-rise apartment houses have piled castle upon castle for some 20 or more stories in the air, it is extremely difficult to equate these modern counterparts with their drawbridged and turreted ancestors. The builders of today’s cubicular confusion have tried to compensate for the functional construction by providing lobbies in Brooklyn Renaissance that rival in decor the throne room at Knossos. They have also provided built-in air-conditioning, closed circuit television, playrooms and laundromats. There áre tropical balconies to cool the fevered brow in the short, hot northern Summer, which, the other nine months, serve as convenient places to store the floor mop and scrub pail. On the debit side they also contain miles of utility and sanitary piping which convey sound throughout the building with all the gusto of the mammoth organ in the Mormon Tabernacle at Salt Lake City. Also, the prefabricated or frugally plastered walls have their molecules so critically near the separation level that they oppose almost no barrier at all to alien sounds from neighboring apartments. This often forces one into an embarrassingly auditory intimacy with the surrounding tenants. Such are the hazards of modern apartment house living. One of my brother Justices, the Honorable Harold J. Crawford, has opined that in this day in our large cities it is fruitless to expect the solitude of the sylvan glen. (Matter of Twin Elm Management Corp. v. Banks, 181 Misc. 96.) In this we concur. Particularly so, when we consider that all of us are daily assaulted by the “ roaring traffic’s boom ”, the early-morning carillon of the garbage cans and the determined whine of homing supersonic jets. Further, children and noise have been inseparable from a time whence the mind of man runneth not to the contrary. This court, therefore, is not disposed to attempt anything so schizophrenic at this late date.
Weighing the equities in this difficult controversy, the court finds that the Sokolows were there first, with a record as good tenants. The Levins underneath seem to be good tenants also. This was attested to by the superintendent who was called upon to testify. He made the understatement of the year when he *1017 said: “ I kepi out of the middle of lliis fight. It’s near Christmas and this is no time for me to fight with tenants ” — a piece of homely pragmatism which would have gladdened the heart of William James.
In his own crude way the superintendent may have suggested the solution to this proceeding. This is a time for peace on earth to men of good will. As the court noted above, they are all nice people and a little mutual forbearance and understanding of each other’s problems should resolve the issues to everyone’s satisfaction.
The evidence on the main question shows that in October the respondents Sokolow were already in a fixed relationship to the landlord. The Levins, on the other hand, were not — their position was a mobile one. They had the opportunity to ascertain what was above them in the event they decided to move in below. They elected to move in and afterwards attempted to correct the condition complained of. Since upon the evidence the overhead noise has been shown to be neither excessive nor deliberate, the court is not constrained to flex its muscles and evict the respondents. Upon the entire case the respondents are entitled to a final order dismissing the petition.